(73 Misc. Rep. 607.)

### CITY OF ROCHESTER v. GUTBERLETT.

(Supreme Court, Special Term, Monroe County. October, 1911.)

1. JURY (§ 35*)—RIGHT TO TRIAL BY JURY—VIOLATION OF RIGHT.
   The Legislature may grant authority to a city to maintain a suit for injunction against threatened violations of penal statutes without violating the constitutional right to trial by jury.
   [Ed. Note.—For other cases, see Jury, Cent. Dig. § 241; Dec. Dig. § 35.*]

2. INJUNCTION (§ 102*)—NATURE OF REMEDY—EXISTENCE OF REMEDY AT LAW.
   The remedy for violation of a statute consisting in the punishment for the commission of the act prohibited is not an adequate remedy at law, preventing a suit for injunction to prevent the performance of the act.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. § 176; Dec. Dig. § 102.*]

3. MUNICIPAL CORPORATIONS (§ 607*)—POLICE REGULATIONS—CONSTRUCTION— "COLLECTOR OF GARBAGE."
   One who procures regularly from various places in a city fragments and scraps of food left over and transports them in wagons to a farm for use as food for swine is a "collector" of garbage and kitchen refuse within

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a municipal ordinance prohibiting such collection by any persons not having a contract with the municipality therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 607.*

For other definitions, see Words and Phrases, vol. 2, pp. 1256, 1257.]

4. MUNICIPAL CORPORATIONS (§ 607*)—POLICE REGULATIONS—CONSTRUCTION—"GARBAGE."

In an ordinance prohibiting the collection of garbage by persons not having a contract with the municipality therefor, though the word "garbage" involves a rejection of the material for use, it does not follow that it means a rejection of the material for all purposes, nor does the term involve the idea of filth, nor the commencement of fermentation of the material.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 607.*

For other definitions, see Words and Phrases, vol. 4, pp. 3040, 3041.]

5. CONSTITUTIONAL LAW (§ 278*)—POLICE REGULATIONS—VALIDITY OF ORDINANCE.

An ordinance prohibiting the collection of garbage by persons not having a contract with the municipality therefor does not deprive the owners of such material of their property, but merely prevents a delivery thereof within the city limits to one engaged in the violation of the city law.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 765–770, 772–806, 808–810; Dec. Dig. § 278.*]

6. EMINENT DOMAIN (§ 2*)—POLICE REGULATIONS—VALIDITY OF ORDINANCE.

Even if an ordinance prohibiting the collection of garbage by persons not having a contract with a municipality therefor deprived the owners of their property without compensation, it would be a proper exercise of the police power, being designed for the protection of the public health.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2.*]

7. MONOPOLIES (§ 4*)—VALIDITY OF GRANTS—POLICE POWER.

An ordinance prohibiting the collection of garbage by persons not having a contract with the municipality therefor is not invalid, though it grants a monopoly to the person with whom the municipality contracts, since it is a valid exercise of the police power.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 3; Dec. Dig. § 4.*]

Action by the City of Rochester for permanent injunction against Edward C. Gutberlett. Judgment for plaintiff.

See, also, 127 App. Div. 933, 123 N. Y. Supp. 111.

William W. Webb, Corp. Counsel, and John M. Stull, Asst. Corp. Counsel, for plaintiff.

Wile & Oviatt, for defendant.

SAWYER, J. [1] It is sought to enjoin the defendant from violating one of the penal ordinances of the city of Rochester, under the authority of section 126 of the charter of said city, which reads as follows:

"The city of Rochester may maintain actions in courts of record of competent jurisdiction to restrain violations of penal and other ordinances of the common council."

The right of the city to maintain the action is attacked by the defendant upon the theory that the authority thus conferred upon the

city was beyond the power of the Legislature to grant, because it deprives defendant of his constitutional right to a trial by jury, and, further, that it involves a demand upon a court of equity to restrain the commission of an act which is, in and of itself, not a nuisance.

Early in the history of this case a motion was made by defendant for an order settling the issues of fact and sending same to a jury for trial. This motion was denied, and upon appeal the order was affirmed by the Appellate Division. City of Rochester v. Gutberlett, 137 App. Div. 933, 123 N. Y. Supp. 1111.

An examination of the briefs used upon the argument before the Appellate Division shows the defendant to have in that court asserted his alleged right to have the issues submitted to a jury, and the denial of that contention must be regarded as controlling here.

In the absence of opinion by the appellate court, it may not be amiss to refer to one of the reasons which led to the decision of the court below. It is not sought to punish defendant for past offenses, but to restrain him from future violations.

In the one case, unquestionably, under our Constitution he cannot be deprived of his right to trial by jury; while in the other it has uniformly been the law that, where the relief sought was equitable only, a jury trial could not be had, unless it seemed in the discretion of the court to be expedient.

The fact that the Constitution prohibits the enactment of a statute abrogating the right to trial by jury in cases where it had formerly existed does not, in my opinion, prohibit the Legislature from extending the powers of a court of equity so as to restrain threatened violations of penal laws.

There is a marked difference in principle between the trial of a charge of actual commission of an offense, and the mere attempt to restrain its future commission.

The practical application of this difference in principle is not new, as is illustrated by the statutes governing the sale of intoxicants. One charged with the illegal sale of liquors is entitled of right to be tried by a jury; while the same law provides that an action may be maintained to enjoin him from future illegal sales in which a right to jury trial is denied. It may be inferred that the court, in its consideration of the motion referred to, recognized and intended to enforce the distinction here pointed out.

As to the objection that a court of equity will not interfere by injunction to restrain the threatened violation of a penal ordinance, where the violation itself will not constitute a nuisance, it of course is true that such was formerly the rule adhered to by courts of equity, and the same is in most instances still followed. Within constitutional limitations, however, the courts, whether of law or equity, are subject to the command of the Legislature; and their decision to extend or to withhold equitable relief in given cases may be set aside, as is here done, by express statute.

[2] One of the leading cases relied upon by defendant in this connection is that of Village of Brockport v. Johnston, 13 Abb. N. C. 468. There the court refused to exercise its equitable power to restrain the violation of a penal ordinance of the village of Brockport,

holding that the corporation must be relegated to the remedy provided by the ordinance. It is interesting to note that, since this decision, its force as law has been destroyed by subdivision 16 of section 90 of the village law, wherein a village is expressly given the power to enforce such an ordinance by injunction. So far as I am aware, this amendment has never been successfully attacked; nor do I think it could be. There, as here, the municipal corporation is expressly given the right to restrain a violation of its ordinance by injunction, and that right carries with it, of necessity, a command that the court shall entertain the action and in proper case grant the relief demanded. Whether the rule that injunctive relief will not be accorded where the plaintiff has an adequate remedy at law, or whether the section under consideration creates an additional remedy and leaves it optional with the city to apply whichsoever may seem best suited for its purposes, I do not attempt to decide. It seems clear that, under the circumstances here exhibited, no adequate remedy at law could be had, nor any remedy except by a multiplicity of suits.

If prosecuted at law under the penal provisions of the ordinance, defendant can only be charged and tried for one specific offense at a time, although he may have committed 50 exactly similar offenses within the same week; if convicted, he could continue the alleged wrongful business, hoping to escape prosecution for the greater part of his wrongdoing and paying cheerfully for penalty for such few as might be followed by the infliction of punishment. It is manifestly impossible for the city to institute penal proceedings for each or any considerable number of violations; and, even if this could be done, the burden of labor and expense entailed would be most oppressive. Again, if it were feasible to institute a series of prosecutions, each one would necessarily be predicated upon the fact that the danger to the public health sought to be prevented had been actually incurred.

The ordinance under consideration was enacted for the protection of the health of the community, and it cannot well be claimed that a remedy which only punishes for possible injury thereto actually had is an adequate remedy at law for its protection.

It therefore becomes necessary to investigate this case upon its merits, and give or withhold the desired relief as the law and facts shall require.

[3] In pursuance of the legislative and other powers given to it by sections 2 and 85, and subdivision 1 of section 86 of its charter, the common council of the plaintiff city, prior to the commencement of this action, enacted an ordinance providing for regulating the collection of its garbage and other refuse, which, so far as it is here involved, reads as follows:

"No person shall collect or carry on the business of scavenger, collector of garbage, bones or kitchen refuse * * * without a license from the bureau; but no license for the collection of garbage, dead animals, bones or kitchen refuse shall hereafter be issued except to the person or persons, firm or corporation, having a contract with the city for the collection of garbage therein. * * *"

The ordinance further directs the cancellation of "all such licenses heretofore issued and unexpired, except that issued to the Genesee Reduction Company, *the city garbage contractor*."

By section 86 of the charter, the power to regulate and license certain occupations is specifically given. The collection of garbage is not therein in terms mentioned, but its regulation in that manner is a power usually exercised by the public authorities of cities and towns in the interest of public health, and by the very necessities of the case has come to be acquiesced in by the people and the courts as a valid and necessary exercise of the police powers, and is well within the scope of the general powers given this city.

The defendant's attorneys, in a very able and exhaustive brief, in considering the general power of cities to regulate and license such occupations, contend that the ordinance under consideration is not a legitimate exercise of such undoubted power, but that, if it were, so far as applicable to defendant, it is unreasonable, and therefore void.

Defendant is a farmer, living just outside the city of Rochester and largely engaged in the raising of hogs. In pursuance of this business, he purchases from certain of the clubs, restaurants, and larger hotels within the city such portions of food as have been rejected for human consumption, consisting generally of bread crumbs and scraps, meat scraps, orange peel, banana skins, chicken bones, potato scraps and peelings, cabbage leaves, egg shells, onions and carrot trimmings, and other similar materials, some of which had been rejected in the preparation of food for the table, and some of which had been actually served, remained uneaten, and scraped from the plates into the receptacles provided for foodstuffs so rejected.

It is conceded that defendant had no license for the collection of garbage and kitchen refuse. He, nevertheless, from time to time, and usually several times in a week, sent his carts into the city, where they proceeded from place to place, where his contracts were, gathered this material, and transported same in the wagons to his farm for use. The ingenious argument of counsel that the material in question is not "garbage," and that the acts of this defendant in so gathering and transporting it did not render him a collector of garbage within the fair meaning of the word "collector" as used in the ordinance, has been examined with much interest. It would seem that one who goes from place to place gathering material of any sort together for the ultimate purpose of general and commingled use is a collector of such material, whether it be gathered from the refrigerators within buildings, from rear porches or sheds, or from exposed places in open yards; whether he calls at many places or few; whether he gathers material which he has purchased at the various places, or that which is given to him for the carrying away. Whether he retains the same in the cans in which it is contained when he gets it, or dumps it in a mass in his wagon, carrying it away in bulk, would not seem to give reasonable foundation for a difference in denomination of the act. Within the fair meaning of this ordinance, I am of the opinion that a "collector," as therein spoken of, is one who gathers the prohibited material for the purpose of taking it away, without reference to where or how he gets it, or the means or precautions he may take for its transportation.

[4] The same argument may in principle be applied to the suggestion of counsel that the material in question is not garbage. While an ordinance such as is here under consideration is to be strictly con-

strued, it nevertheless is to be construed according to the fair and usual meaning of its language in the light of the purpose of its enactment. If material, such as is here shown to have been collected by defendant, is not garbage, bones, and kitchen refuse, it is difficult to understand what it is. Unquestionably, the suggestion of counsel that the word "garbage" involves a rejection of the material for use is true; but it does not, I apprehend, follow that it means a rejection of the material for all purposes. That which is collected by the city contractor from the cans of the householders is conceded to be garbage. It, nevertheless, is useful for certain purposes and is gathered by the collector of the city of Rochester largely because of its value for the purposes of the business in which that corporation is engaged. And, so of the material under consideration; while it may be still of some use and has not been rejected for all purposes, it nevertheless has been rejected as useless and unfit for the purposes for which its constituent parts are ordinarily used. It has been rejected as unfit for food. It is more or less mingled so that it is objectionable to human sensibilities, as well as unfit for human consumption. It is, in my judgment, garbage, bones, and kitchen refuse, within the meaning of the words and the meaning of the ordinance.

The court is not unmindful of the fact that refuse of this kind is usually noisome and disgusting, both in appearance and odor, and that the word "garbage" carries to the average mind the idea of filth; but, if refuse of this character is not to be held as garbage until fermentation has commenced, then the very object of the ordinance would be defeated, and a necessary and proper precaution in the interest of the inhabitants of the city brought to naught.

It requires but a moment's consideration to see that, if this be so, any man, or any hundred or more men, could gather such material and transport it upon and over the streets of the city as convenience demanded; and the burden in each separate instance would be placed upon the city to show that it had become garbage within the thus restricted meaning of the phrase. Who shall say when fermentation to an objectionable extent has taken place? Men's sensibilities and perceptions differ; that which is not offensive to one may be extremely so to another. And where shall the line be drawn? When is the collecting harmless, and when is health endangered? Can this city only protect itself by proving each can to be actually harmful? The inquiry suggests the true answer, and any holding, other than that this defendant is a collector of garbage, bones, and kitchen refuse, would, I am persuaded, be a travesty both upon language and justice.

[5] This brings us to the consideration of the validity of the ordinance itself. If it be invalid for any reason, defendant's occupation cannot be restrained under it. As has been said above, the general power of a city to regulate by ordinance the collection and transportation of garbage within its corporate limits is generally conceded and acquiesced in as a valid exercise of the police power for the protection of the general health of the community. Its exercise, however, is within well-understood and definite limits, transgression of which will not be upheld.

At the outset, it is essential to consider the objection advanced that the ordinance is void in that it seeks to deprive the owner thereof of his property without due compensation.

It is not denied that the garbage drawn by this defendant is sold to him for a valuable consideration by the various concerns from which it is obtained; that it is, as it accumulates from time to time, deposited in clean cans furnished by defendant with some attempt at sorting of the various materials; that the cans are covered and kept in a cool place, so as to delay fermentation, and screened from flies and other germ-bearing insects; that in a sense, although garbage, it is still property, I think, also, cannot be denied.

The proprietors of these public places from whom defendant purchases are not parties to this action, and the plea in their behalf would not seem relevant to this issue; nor does the ordinance affect them, except as it may add somewhat to the burden of handling their refuse. This ordinance is aimed only at collectors of garbage and seeks only to prevent persons, not approved by the city authorities, from engaging in the collection thereof.

It in no manner prohibits the owner from retaining it upon his own premises so long as he does not permit it to become noisome, or forbids his selling or otherwise disposing of it. It may be fairly argued that, under this ordinance, as drawn, any individual, hotel, club, or restaurant interested may sell and dispose of its own garbage to whomsoever it may please and deliver same to its vendee. If this be true, the ordinance does not deprive the owners thereof of their property, either with or without compensation; it simply prevents a delivery of it within the city's limits to one engaged in a violation of the city law. Is there anything in the enactment which prevents each one of them selling his garbage and delivering it in the city to the licensed collector, or outside the city to any one?

[6] But, assuming that the original owners of this material are, by the operation of the ordinance, deprived of their property without compensation, an analysis of the decisions seems to be conclusive that such deprivation is a valid exercise of the police power and necessary for the welfare of the community; and that, if the ordinance is adopted in good faith for the indicated purposes, it is not a violation of the constitutional rights of the individual.

This precise question seems to be new in this state, but elsewhere the decisions have been numerous; and, while to some extent varying in their conclusions, the weight of authority, I believe, upholds the validity of such action.

In Gardner v. State of Michigan, 199 U. S. 325, 26 Sup. Ct. 106, 50 L. Ed. 212, Mr. Justice Harlan quotes with approval the following language of the Supreme Court of Michigan in a case similar to this:

"It is manifest that were individuals permitted to escape the regulation fixed by the common council, and dispose of garbage as they severally saw fit, all system in the collection and removal of refuse matter would be destroyed. Even if this garbage have some value for some such use as that to which respondent's employer put it—the feeding of hogs—the courts will not, at the expense of the public health, recognize that this refuse matter in its legal aspect is property. No property right has, therefore, been violated. * * * The court may well take notice that table refuse, when

dumped into receptacles kept for that purpose, will readily ferment and emit noisome odors, calculated to affect the public health. If in providing against such a nuisance the owner of such material suffers some slight loss, the inconvenience or loss is presumed to be compensated by the common benefit secured by the regulation."

And later in the same case the learned justice says:

"If it be said that the city might have adequately guarded the public health and at the same time saved the property rights of its owners, on whose premises garbage and refuse were found, the answer is that the city thought otherwise, and we cannot confidently say that its constituted authorities went beyond the necessities of the case and exceeded their proper functions when they passed the ordinance in question."

In California Reduction Co. v. Sanitary Reduction Works, 199 U. S. 306, 26 Sup. Ct. 100, 50 L. Ed. 204, a similar ordinance was under consideration and the subject of attack upon this ground. The opinion of the court was prepared in that case, also, by Mr. Justice Harlan, who quotes with approval the following language from Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205:

"The power which the states have of prohibiting such use by individuals of their property as will be prejudicial to the health, the morals, or the safety of the public, is not—and consistently with the existence and safety of organized society cannot be—burdened with the condition that the state must compensate such individual owners for pecuniary losses they may sustain by reason of their not being permitted, by a noxious use of their property, to inflict injury upon the community."

Like invasions of private rights have been sanctioned, upon the ground of public necessity, in a long line of cases, notably, Atlantic City v. Abbott, 73 N. J. Law, 281, 62 Atl. 999 (N. J. Supreme Ct. 1906); Dupont v. Columbia, 20 App. D. C. 479; People v. Rosenberg, 67 Hun, 55, 22 N. Y. Supp. 56; Jacobson v. Massachusetts, 197 U. S. 27, 25 Sup. Ct. 358, 49 L. Ed. 643.

In this last case the following language of a previous decision is quoted with approval as indicating the limitations of private rights:

"The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is, then, liberty regulated by law."

Shultz v. Maryland, 112 Md. 211 (76 Atl. 592, Md. Ct. of App. 1909), wherein a similar ordinance was held not to be an unlawful invasion of private property, is particularly interesting in this connection, because there the contract of the collector with the hotels for their garbage was precisely like those under which defendant is working.

Every case examined in the study of this question seems to have been decided upon its own facts and the decision to have always hinged upon the question as to whether the statutory enactment was necessary for public welfare and reasonable for the purpose.

[7] The collection of garbage by defendant seems to be incidental to his main business of farming and raising hogs; but others might wish to engage in it exclusively. The ordinance prevents, however, all persons from engaging therein, except the reduction corporation

mentioned as the city contractor. That this gives the collector a monopoly of the business is not to be gainsaid; and it is equally true that monopolies are contrary to the spirit of our law and, in these later · days, decidedly contrary to the spirit and ideas of the people generally.

A constitutional provision in this state prohibits the granting of an exclusive franchise, and the courts have been uniformly jealous that its mandate shall be strictly enforced.

My attention has been called to a number of authorities, seeming to sustain the view of defendant, that we here have an invasion of that constitutional prohibition. I think all of them are clearly distinguished from this case except Conover v. Long Branch Com., 65 N. J. Law, 167, 47 Atl. 222, which appears to support this criticism. While the views of that court are to be accorded our respectful consideration, they, of course, are not binding and fail, in my opinion, to apply the true rule. As has been said, the very necessities of municipal life and the welfare of great numbers of people demand stringent precautions and their rigid enforcement for the protection of public health; and any reasonable regulation, deemed by the municipal Legislature necessary for the purpose and not distinctly prohibited, is a valid exercise of the police power.

The primary purpose of this ordinance is not the granting of an exclusive right or monopoly. Its real and only purpose is to so protect the collection and disposal of a substance recognized by all as dangerous to human existence that the least possible harm shall flow therefrom. If, in the effort so to do, exclusive collection is given the city contractor, that right is incident only to the main purpose of the law, and of a valid exercise of the police power, and it seems to me does not vitiate the ordinance as a violation of the Constitution.

The right of cities to license the collection of garbage is well recognized, and that right carries with it by implication the power to grant or withhold licenses, as, in individual instances, may be deemed for the best interest of the community. Whether such licenses are withheld from all but ten men, or are restricted to only one, the principle is the same; and I am not prepared to hold that the giving of such a license to ten men to the exclusion of all others is constitutional, and the giving of it to one man alone unconstitutional, unless the primary object sought to be attained is the giving of such monopoly, in which event it would be unconstitutional in either case.

In California Reduction Co. v. Sanitary Reduction Works, supra, the ordinance under consideration, as well as that involved in the discussion of Gardner v. State of Michigan, supra, gave an exclusive right and privilege for the collection of such refuse; and in both cases the ordinances were held to be valid, and penal conviction thereunder was sustained by the United States Supreme Court. In neither of these cases, however, does the question of monopoly seem to have been considered; both decisions having been apparently founded only upon the theory that such an ordinance was not an invasion of the private rights of property. The California case differed, also, in its facts from those here displayed; the stuff collected having been exceedingly noisome and filthy.

In Atlantic City v. Abbott, supra, the ordinance before the court prohibited any one, except the duly authorized contractor of Atlantic City, from using the streets for the "collection or disposition of offal, garbage, or refuse matter that might become dangerous to public health"; and Judge Swayze, in sustaining the ordinance, uses the following language:

"The disposition of garbage is a matter of prime importance to the public health, and justifies careful inspection and regulation on the part of the public authorities, in order to secure its prompt removal and disposition at seasonable hours, and under such conditions that the danger of scattering offensive matter in the streets may be reduced to a minimum. These objects can be more readily secured if the matter is under the exclusive control of the city. The time and frequency of collection, the method of conveyance, and the method and place of final disposition of the refuse, are all important, and proper control can only be secured by close and careful inspection, which becomes more and more difficult as the number of places and persons to be watched increases. It is not sufficient that the method of collection and carting should be harmless, and involve no menace to health by the use of the streets; it is necessary, also, that the refuse should be finally disposed of in such a way that the public authorities may be assured that it will be innocuous. To accomplish that purpose, they may adopt any reasonable plan of disposition, provided they act in good faith for the protection of the public health, and not in an arbitrary manner. We see no reason in the present case to doubt that the ordinance was passed in good faith, and, although it creates an exclusive right, we cannot say that this is not the result of an attempt to safeguard the public health by means which are reasonable and bear a real and substantial relation to the end to be accomplished—the final disposition of the refuse matter."

An ordinance similar in principle was considered by the Supreme Court of Nebraska in Smily v. MacDonald, 42 Neb. 5, 60 N. W. 355, 27 L. R. A. 540, 47 Am. St. Rep. 684, and this feature was disposed of as follows:

"The means adopted appear to be * * * a reasonable and necessary regulation by a judicious exercise of the discretion conferred upon the city. That the object of all such regulations can be best attained by intrusting the work in hand to a responsible contractor who possesses the facilities for carrying it on with dispatch and with the least possible inconvenience to the public is apparent to all."

To the same effect, also, are Dupont v. District of Columbia, 20 App. D. C. 479; City of Grand Rapids v. DeVries, 123 Mich. 570, 82 N. W. 269; Matter of Van Dine, 6 Pick. (Mass.) 187, 17 Am. Dec. 351; Shultz v. State of Maryland (Md. Ct. App., Oct. Term, 1909) supra.

I am convinced that the subject-matter of this ordinance is not only a lawful exercise of the corporate powers of the city, but that, both in its general scope and in its application to this defendant, it is reasonable and proper.

The situation here presented is not the same as that before the court in the Matter of Jacobs, 98 N. Y. 98, 50 Am. Rep. 636, and in others submitted by defendant.

In the Jacobs Case it was distinctly held that, in the exercise of the police power, personal and property rights might be invaded; that the determination of the Legislature as to what is a proper exercise of that power is not, however, final nor conclusive, but is subject to

the scrutiny of the courts; and the act there considered was held unconstitutional, not so much because it was an invasion of private rights, as because it was inoperative for the purpose for which it was ostensibly passed.

Concededly, the garbage collected by defendant was not, in the sense that it had become offensive to the nostrils, at the time a nuisance. Public experience teaches that the cases in which this can be said are rare, and it is a matter of common knowledge that such material at its best estate is but a step removed from a nuisance, and a short step at that.

In the discussion of these cases, almost all the authorities use the phrase "is or may become a nuisance"; and to hold that it is incumbent upon the city, in every instance, before it can safeguard the public health, to show the degree of fermentation necessary to render the stuff a distinct nuisance has taken place, would defeat the entire object of this very salutary ordinance.

If such should be held to be the law, any person could engage in business as a garbage collector without reference to the ordinance requiring a license, safe in the knowledge that he could be called upon to respond for no violation, unless it were shown that the can in question was actually a nuisance. With such a holding the city would be powerless to protect its inhabitants from filth contamination, a situation which would of itself be unreasonable.

Neither is the ordinance an unreasonable interference with defendant's alleged business.

As was said in Grand Rapids v. De Vries, supra:

"The gathering of garbage is not a trade, business, or occupation in any proper sense. * * * It is a matter in which the public agencies are authorized to pursue the best means to protect the public health."

It is at the best a dealing in a material universally recognized as dangerous to public welfare; and an ordinance which prohibits all persons except the contractor under the control of the city from so engaging is not, in my opinion, unreasonable, either generally, or as to this defendant.

Other questions discussed in the briefs submitted have all been carefully examined and considered. It does not seem necessary to refer to them in this opinion (already too extended), although some of them are exceedingly interesting.

I can only say that my study of them does not lead me to doubt plaintiff's right to the prohibitive relief it seeks.

It is not improper for me, however, to add that, if the case of Iler v. Ross, 64 Neb. 710, 90 N. W. 869, 57 L. R. A. 895, 97 Am. St. Rep. 676, were an authoritive decision of this state, a different conclusion would have of necessity been reached. As it is, with the utmost respect for the learned court by which it had consideration, I cannot assent to the result there reached, and believe that the weight of authority is otherwise.

Judgment ordered for plaintiff, with costs. Findings to be submitted.

Judgment for plaintiff, with costs.