## C. W. BISHOP v. CITY OF TULSA.

No. A-3893.   Opinion Filed Sept. 23, 1922.
(209 Pac. 228.)

(Syllabus.)

1. **Statutes—Law Creating Municipal Courts for Certain Cities "General Law" and not Special Law.**—Chapter 199, Laws 1919, creating and relating to municipal courts, and providing that the act shall apply to cities having more than 50,000 and less than 80,000 inhabitants, as determined by the last, preceding federal census, is a "general law," and not special within the meaning of the Constitution.

2. **Statutes—Law Applying Uniformly to Designated Class a "General Law."** A statute which applies to all persons or things of a designated class uniformly throughout the state, omitting no person or thing belonging under that classification, is a general law within the meaning of the Constitution.

3. **Constitutional Law—Statutes—Validity in Part—Effect of Provision for Unconstitutional Method of Selecting Jury.** If a statute provides for an impossible or unconstitutional method of selecting a jury, that fact alone will not necessarily make other portions of the statute invalid. If a construction can be given an act which will render it constitutional, that construction will be adopted, even though it may eliminate a part of the act.

4. **Municipal Corporations—Creation of Monopoly to Regulate Disposal of Garbage—Police Power.** It is within the police power of cities of this state to regulate the orderly, sanitary disposal of garbage, and such cities, pursuant to ordinances, may create a monoply for that purpose.

5. **Same—By-Products of Kitchen or Restaurant not "Garbage".** By-products of a kitchen or restaurant, used or cared for in a harmless, inoffensive, sanitary manner, are not necessarily "garbage" within the ordinary meaning of the term. The product called "hog food," as shown in evidence here, was not "garbage" as ordinarily defined.

Appeal from Municipal Court of Tulsa; F. D. Prentice, Judge.

C. W. Bishop was convicted of violating the garbage disposal ordinances of the City of Tulsa, and he appeals. Reversed and remanded.

Rogers & Jones, Melvin Haven, and Wm. T. Thompson, for plaintiff in error.

S. P. Freeling, Atty. Gen., and E. L. Fulton, Asst. Atty. Gen., for defendant in error.

BESSEY, J.  C. W. Bishop was convicted, on the 20th day of November, 1920, in the municipal court of the city of Tulsa of violating the garbage disposal ordinances of the city, and was assessed a fine of $19 and costs, from which conviction he appeals to this court. At the same time the appeal was filed a petition for a writ of prohibition was filed by said defendant and granted, pending this appeal.

Plaintiff in error, herein referred to as the defendant, was one of the owners of a number of restaurants known as Kan-

sas City Waffle Houses. Ordinances Nos. 741 and 742 of the city of Tulsa provided that the board of commissioners should employ some person as city garbage collector, and that it should be unlawful for any other person to transport garbage along or over the streets or alleys of the city; that the garbage should be deposited by the occupants of premises in a certain kind of can or container, from which it should be collected by the city garbage collector, who was also authorized to charge the occupant of the premises for the removal of the garbage. Originally the penalty provided for the violation of this ordinance was a maximum fine of $100, but the ordinance was subsequently amended so as to provide for a maximum fine of $19 and costs.

The testimony in this case shows that at these several restaurants the trimmings from meats, fruits, bread, and vegetables, not suitable to serve to the patrons of high-class restaurants, together with certain scraps or leavings from the tables, were spread upon concrete floors and mixed with meal, bran, and oats, making a practically dry, composite mixture of high nutritive value. This mixture was then placed in cans and labeled "Hog Food," and was taken by the defendant and his associates to their hog lots beyond the city limits, where it was fed to their hogs. There is evidence to show that this product was sanitary, giving off no offensive odor; that in extremely warm weather a small per cent. of benzoate of soda was added to arrest possible decomposition; and that this product was similar to other products advertised and sold as hog food, under various trade-names, in the open market.

The defendant says this conviction should be set at ing the municipal court of the city of Tulsa is unconstitutional; (2) that the ordinances under which the defendant was naught for the following reasons: (1). Because the act creat-

prosecuted are unconstitutional; (3) that the accusation is not supported by the law or the evidence.

Defendant claims that the act establishing the municipal court for the city of Tulsa purports to be a general law, but is in fact a special law, prohibited by the Constitution, not having a uniform application throughout the state. The title and section 1 of this act are as follows:

"An act creating and relating to municipal criminal courts in cities * * * of more than fifty thousand inhabitants, defining the jurisdiction thereof, providing a code of procedure therefor, providing for the appointment of judges and clerks thereof, repealing all acts and parts of acts in conflict herewith, and declaring an emergency.

"Be it enacted by the people of the state of Oklahoma:

"Section 1. That in cities of the state of Oklahoma having a population of more than fifty thousand (50,000) and not exceeding eighty thousand (80,000) inhabitants as determined by the last preceding federal decennial census, or by the last preceding special federal census, there shall be, and is hereby, created and established a court of record which shall be known as the 'municipal court of the city of————' naming the city wherein such court is established)."

Laws 1919, c. 199.

Section 32 of article 5 of the Constitution of this state provides as follows:

"No special or local law shall be considered by the Legislature until notice of the intended introduction of such bill or bills shall first have been published for four consecutive weeks in some weekly newspaper published or of general circulation in the city or county affected by such law, stating in substance the contents thereof, and verified proof of such publication filed with the Secretary of State."

Section 46 of the same article provides that the Legislature shall not, except as otherwise provided in the Consti-

tution, pass any local or special law authorizing the regulation of the affairs of counties, cities, towns, wards, or school districts, or prescribe the powers or duties of officers of such municipal organization.

Section 59 of the same article is as follows:

"Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

It is well settled that a statute which applies to all persons or things of a designated class uniformly throughout the state, omitting no person or thing belonging under that classification, is a general law within the meaning of the Constitution. Ex parte Anderson, 33 Okla. 216, 124 Pac. 980; 26 R. C. L. 813-818.

The court will take judicial notice of federal censuses, and by so doing it is apparent that the provisions of this law applied at the time of the enactment of the act to only two cities in the state, viz., Tulsa and Oklahoma City.

The question of whether a statute is general or special in its nature and scope has been the subject of much discussion in this and other states. It is well settled everywhere that all statutes are entitled to the presumption which favors their constitutionality. Ex parte Hunnicutt, 7 Okla. Cr. 214, 123 Pac. 179; 25 R. C. L. 999, and cases cited; C., R. I. & Pac. R. Co. v. Beatty, 34 Okla. 321, 118 Pac. 367, 126 Pac. 736, 42 L. R. A. (N. S.) 984.

With this rule of construction in mind, let us see whether this is a general law or a local or special law; and, if the latter, was it one the law authorizes and was it legally enacted? This court has adopted another rule of construction, that the question of whether a general or special law is applicable is primarily for the Legislature to determine. This rule is also

supported by the weight of authority in other states. Chickasha Cotton Oil Co. v. Lamb et al., 28 Okla. 275, 114 Pac. 333; Hatfield v. Garnett, 45 Okla. 438, 146 Pac. 24; 25 R. C. L. 825, and cases cited.

Construing the clause "as determined by the last preceding census" according to the rules of construction above mentioned, we think the act means the census next preceding the organization of such a court, and that it is prospective as well as retrospective in its operation. If at some time subsequent to the enactment of this act Muskogee or some other city acquired 50,000 inhabitants it would automatically come within the classification and be entitled to a court, as in the act provided. Any other conclusion would not be in harmony with the established rules of constitutional and statutory construction. It would be equivalent to this court's saying that where a statute is susceptible of either of two constructions, one upholding its constitutionality and the other holding it in violation of the Constitution, the statute should be held invalid. The contrary is the true rule.

The fact that certain portions of the statute providing for a trial by jury may be in conflict with the Constitution will not necessarily operate to render the statute void as a whole. It is an established rule of statutory construction that, if a construction can be given an act which will render it constitutional, that construction will be adopted, even though it may eliminate a part of the act, if the remainder may be disassociated from the part eliminated and leave a sensible and complete law of which it can be said that it probably would have been enacted by the Legislature had it known that the part eliminated was unconstitutional and void. 26 R. C. L. 1003, and cases cited; 6 R. C. L. 130. In the instant case the accused was not entitled to a jury. The offense charged was a mere petty offense, of which the police magistrate had jur-

isdiction, without a jury. Ex parte Daugherty, 21 Okla. Cr. 56, 204 Pac. 937; Ex parte Johnson, 20 Okla. Cr. 66, 201 Pac. 533; Ex parte Bochmann, 20 Okla. Cr. 78, 201 Pac. 537.

It is next urged that the garbage disposal ordinances in question are void because they operate to deprive individuals of their property without due process of law, and create a private monopoly for profit in the person designated and authorized to dispose of the garbage. It is well settled that it is within the police power of cities of this and other states to provide for the orderly sanitary disposal of garbage. In nearly all cities ordinances of the character here at issue have been enacted, and, within constitutional limitations, have been upheld by the courts when attacked, as being no interference with private property rights and not void for unreasonableness. Kimball v. Woodward, Health Com'r, 233 Mass. 275, 123 N. E. 684, 15 A. L. R. 275; Pantlind v. City of Grand Rapids, 210 Mich. 18, 177 N. W. 302, 15 A. L. R. 280.

Finally, it is contended that the accusation is not supported by the law nor the facts as shown by the record. The ordinance at issue makes no attempt to define the word "garbage." Where no legal definition is given, a word should be given its ordinary meaning—the interpretation given the word by recognized lexicographers. Webster defines "garbage" as:

"Offal; refuse or waste animal or vegetable matter from a kitchen, market or store; anything filthy."

The Century Dictionary defines the word thus:

"Refuse organic matter in general, especially the refuse animal and vegetable matter from a kitchen; any worthless offensive matter."

It has been held that grease and cracklings from which the fat has been rendered, hauled away within 24 hours, is not

garbage within the ordinary meaning of the term. Nash v. Dist. of Columbia, 28 App. D. C. 598, 8 Ann. Cas. 815. The word "garbage" involves a rejection of the material for use. It does not follow that it means a rejection for all purposes. City of Rochester v. Gutberlett, 73 Misc. Rep. 607, 133 N. Y. Supp. 541.

The term "garbage" is not equivalent to the term "by-product." A by-product is:

A "secondary or additional product of value; something produced in the course of business in addition to the principal product."

It is well known that packing houses, oil refineries, and some other kinds of manufactures make by-products amounting in value to a material part of their gross income. The right to such by-products, when cared for in such a manner as not to interfere with public or private rights, amounts to a private property right that cannot be abrogated or destroyed by police regulations. The utilizing of valuable by-products should be encouraged rather than prohibited.

The record here shows that this by-product called "hog food" was a valuable product; that it was not unsanitary or offensive, and was not refuse or useless matter as defined above. One witness testified that by a slight variation of the hog food formula a product commonly designated "hash" could be made. We cannot say as a matter of law that restaurant hash is necessarily garbage, though some of it should, as a matter of right, be so classified.

We therefore hold that this accusation is not supported by sufficient testimony, and that "hog food," as shown here, as a matter of law is not garbage within the meaning of this ordinance. The conviction of the trial court is reversed, and the cause remanded for further proceedings not inconsistent with this decision.

DOYLE, P. J., and MATSON, J., concur.