Dear Senator Rabon,
¶ 0 This office has received the request asking for an official Opinion addressing, in effect, the following questions:
1. Do the provisions of Article XVIII, §§ 5(a) and 7, of theOklahoma Constitution, which require the grant of a franchise tobe approved by a majority of qualified electors and prohibit thegranting of an exclusive franchise, place any limitations on theability of a municipality to contract with a private solid wastecollection and disposal company?
2. Do the debt limitations of Article X, § 26 of the OklahomaConstitution prevent a municipality from entering into a ten-yearcontract for the provision of solid waste collection and disposalservices which is automatically extended for an additional yearon the first day following the end of the first contract year andwhich includes an interest free loan of $150,000 on which $15,000is forgiven each year until completion of the contract?
3. May a municipal corporation contract with a private companyfor solid waste collection and disposal services withoututilizing the competitive bidding process?
 INTRODUCTION MUNICIPAL AUTHORITY TO CONTRACT FOR SOLID WASTE COLLECTION SERVICES
¶ 1 Municipal corporations[1] have no inherent power or authority and can exercise only those powers that are granted to them expressly or by necessary implication under the Oklahoma Constitution and the statutes. Development Industries v. City ofNorman, 412 P.2d 953, 956 (Okla. 1966); City of Hartshorne v.Marathon Oil Company, 593 P.2d 97, 99 (Okla. 1979). The general powers of municipalities are set out in the Municipal Code and include the power to "[m]ake all contracts and do all other acts in relation to the property and affairs of the municipality, necessary to good government of the municipality, and to the exercise of its corporate and administrative powers." 11 O.S.1991, § 22-101[11-22-101](4). In addition to this general statutory authorization, municipalities are specifically authorized to enter into agreements with private parties in order to provide for solid waste[2] disposal and collection services under the Solid Waste Management Act ("the SWMA"). 27A O.S. Supp.1996, §§ 2-10-101-2-10-1111.
¶ 2 The SWMA empowers municipalities to develop a plan to provide a solid waste management system and imposes a duty upon municipalities to "adequately provide for the collection and disposal of solid waste generated or existing within the incorporated limits" of the municipality. 27A O.S. Supp. 1996, §2-10-901[27A-2-10-901](A). A "solid waste management system" is statutorily defined as the "system that may be developed for the purpose of collection and disposal of solid waste by any person engaging in such process as a business or by any municipality, authority, trust, county or by any combination thereof at one or more disposal sites." 27A O.S. Supp. 1996, § 2-10-103[27A-2-10-103](17). The SWMA further authorizes the municipality to enter into agreements with counties, other municipalities, persons, trusts or any combination thereof to implement a solid waste management system for the municipality. 27A O.S. Supp. 1996, § 2-10-901[27A-2-10-901](A). The term "Person" is broadly defined by the SWMA to include:
 [A]ny individual, corporation, company, firm, partnership, association, trust, state agency, government instrumentality or agency, institution, county, any incorporated city or town or municipal authority or trust in which any governmental entity is a beneficiary, venture, or other legal entity however organized[.]
27A O.S. Supp. 1996, § 2-10-103[27A-2-10-103](13).
¶ 3 Based on a plain reading of these statutory provisions in conjunction with the general authority of a municipality to contract, it is clear that municipalities have been given the authority to provide for solid waste collection and disposal services through a contract with a private party. However, municipalities must still observe any express constitutional and statutory restrictions on this authority. Jacobson's LifetimeBuildings v. City of Tulsa, 333 P.2d 307, 310 (Okla. 1958). Such restrictions may include the constitutional prohibition on granting exclusive franchises, the constitutional limitation on incurring indebtedness beyond the current fiscal year, and the statutory requirements for public competitive bidding. The effect of these provisions on the authority of a municipality to contract for solid waste collection and disposal services will be discussed in the sections that follow.
 I. EFFECT OF THE FRANCHISE PROVISIONS
¶ 4 The power of a municipality to issue franchises to private companies is restricted by Article XVIII of the Oklahoma Constitution. Article XVIII, § 5(a) provides that:
 No municipal corporation shall ever grant, extend, or renew a franchise, without the approval of a majority of the qualified electors residing within its corporate limits, who shall vote thereon at a general or special election . . . and no franchise shall be granted, extended, or renewed for a longer term than twenty-five years.
Okla. Const. art. XVIII, § 5(a).
¶ 5 Municipalities are further restricted by Article XVIII, § 7 which provides that "no exclusive franchise shall ever be granted." Thus, a municipality may grant a franchise to a private company so long as the franchise is approved by a majority of voters within its corporate boundaries, is limited to a term of less than twenty-five years, and does not exclude all other parties from the activity.
¶ 6 In order to decide whether municipalities are restricted by these provisions when entering into a contract for solid waste collection and disposal services, it must first be determined whether that particular type of agreement with a private company amounts to a franchise as that term is used in Article XVIII of the Oklahoma Constitution. The term franchise has been construed to by the Oklahoma Supreme Court to mean "a right or privilege conferred by law. It is the privilege of doing that which does not belong to the citizens of the country generally by common right." State v. Garrison, 348 P.2d 859, 864 (Okla. 1959) (citation omitted). A franchise "grants the holder a right to use public streets, and other public ways, for the purpose of maintaining and operating a business affected with a public interest within the municipality, and embraces the privilege of conducting such business." Oklahoma Gas Electric v. TotalEnergy, 499 P.2d 917, 922 (Okla. 1972). The term is most commonly used to describe a grant from a municipality to operate a public utility or public service corporation within its incorporated limits. See, e.g., Westville Utility Authority v.Bennett, 903 P.2d 880 (Okla. 1995); State v. Garrison,348 P.2d 859 (Okla. 1959); Oklahoma Gas Electric v. De Wolfe,74 P. 98 (Okla. 1903). Common examples of franchises include the right to use the streets granted to public service companies to install water pipes, gas pipes, telephone poles, and electric light poles.
¶ 7 Although a franchise is by definition a right or privilege to use the public streets and ways, "it does not necessarily follow that the converse is true, and that any right or privilege to use public streets, regardless of the manner in which it arises or regardless of its purpose, is a franchise." Ex ParteHouston, 224 P.2d 281, 293 (Okla.Crim.App. 1950) (citingWashington Fruit Produce v. City of Yakima, 100 P.2d 8 (Wash. 1940)). The Supreme Court of Washington held that when "a city undertakes . . . to supply a public need, and to that end purchases the necessary service from the utility, the city is to be regarded as merely authorizing the use of the streets as an incident to the delivery of service to itself, and not as granting a franchise to use the streets for general business purposes. Washington Fruit, 100 P.2d at 12 (municipal contract with private company to furnish overhead lighting system for city streets, highways, and public places, including continued operation and maintenance of the system did not amount to a franchise).
¶ 8 The question of whether the right to use the streets and public ways to provide solid waste collection and disposal service amounts to a franchise has not been specifically decided in Oklahoma. However, the distinction between the types of agreements that are treated as franchises and those that are merely treated as a contract for the provision of a public service is well established. Gardner v. City of Dallas,81 F. 2d 425, 426 (5th Cir. 1936); Savage v. Waste Management,623 F.Supp. 1505 (D.C.S.C. 1985). Traditionally, contracts for the collection and disposal of garbage have not been treated as franchises.[3] Instead, the courts have classified contracts for these services as direct attempts to promote the public health, comfort and welfare; consequently, even exclusive contracts with one company have been consistently upheld as valid under the police power of a municipality. See, e.g., CaliforniaReduction v. Sanitary Reduction Works, 126 F. 29, 32-40 (9th Cir. 1903), aff'd 199 U.S. 306 (1905).
¶ 9 Although the distinction between a franchise and contract for the provision of a public service is subtle and has not been clearly articulated in Oklahoma, the constitutionality of exclusive contracts for garbage collection and disposal services has been routinely upheld. Bishop v. City of Tulsa, 209 P. 228,230 (Okla.Crim.App. 1922); Burns v. City of Enid, 217 P. 1038
(Okla. 1923). Further, the Court of Criminal Appeals in Ex ParteHouston based its decision in part on cases relying on such a distinction. Ex Parte Houston, 224 P.2d 281, 293
(Okla.Crim.App. 1950) (citing State v. Lovelace, 203 P. 28 (Wash. 1921);Wallis v. Fidelity Deposit Company of Maryland, 285 P. 656
(Wash. 1930); City Sanitary Service v. Rausch, 117 P.2d 225
(Wash. 1930). The cases relied upon in Ex Parte Houston hold that a municipality, through its police power, can validly regulate the collection and disposal of solid waste. Based on this power, a municipality has the absolute right to either handle the waste itself or contract with a private party to provide the service. Wallis v. Fidelity Deposit Company ofMaryland, 285 P. 656 (Wash. 1930). The right granted by such a contract is not a franchise, even if the contract gives a private company the exclusive right to collect and dispose of the solid waste. Id. at 657. The Supreme Court of Colorado has similarly held that:
 Common sense resolves a distinction between a contract for such purposes and the term franchise, which ordinarily is accepted as being applicable to the well-known services which ar deemed public utilities. . . . [T]hese utilities never have been considered in the same classification or category with the removal of garbage done under the responsibility of a municipal corporation in performing an affirmative duty imposed thereon as a governmental function for the preservation of public health and safety. Having this imposed duty, a municipality can perform the function by its own employees or can farm the job out under contract; and in that connection, the choice of the City as to which method it will employ is beyond the control of the courts.
Finney v. Estes, 273 P.2d 638, 640 (Colo. 1954).
¶ 10 Although the Oklahoma Supreme Court has never held specifically that this type of contract is not a franchise, the Court did uphold a contract giving a private party the exclusive right to collect solid waste and has followed the traditional reasoning in regard to contracts for solid waste. See City ofMcAlester v. Malone, 243 P.2d 667 (Okla. 1952); Bishop v. Cityof Tulsa, 209 P. 228, 230 (Okla. 1922); Burns v. City of Enid,217 P. 1038 (Okla. 1923). It is well established in Oklahoma that municipalities act for the public health and discharge a governmental function in the collection and disposal of solid waste. City of Purcell v. Hubbard, 410 P.2d 488, 490 (1965). Further, in Bishop, the Supreme Court held in the fourth paragraph of its Syllabus that "[i]t is within the police power of cities of this state to regulate the orderly, sanitary disposal of garbage, and such cities, pursuant to ordinances, may create a monopoly for that purpose." Bishop, 209 P. at 228
(upholding ordinance requiring employment of one person as a garbage collector and prohibiting others from transporting garbage through the streets). Similarly, the Oklahoma Supreme Court, in Burns, surveyed the "great weight of authority" upholding ordinances and contracts granting exclusive rights to collect and dispose of solid waste and upheld an ordinance allowing the mayor to enter into an exclusive contract with a garbage collector. Burns, 217 P. at 1039-41. In both of these cases, the ordinances and resulting contracts were treated as valid exercises of the municipality's police power in order to protect the public health.
¶ 11 Thus, a municipality is not granting a franchise when it contracts with a private company for solid waste collection and disposal service. Instead, the municipality is contracting with a private party to carry out the municipality's duty to provide these services to protect the public health. Although the streets will be used in the provision of this service, this type of incidental usage is not sufficient to make the contract a franchise. Because these types of contracts do not amount to a franchise, the provisions of Article XVIII, §§ 5(a) and 7 requiring submission of the grant of a franchise to a vote and prohibiting the grant of exclusive franchises are inapplicable.
 II. CONSTITUTIONAL LIMITATIONS ON INCURRING DEBT
¶ 12 The ability of a municipality to contract may also be limited by the provisions of Article X, § 26 of the Oklahoma Constitution. Section 26 provides that:
 Except as herein otherwise provided, no county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year without the assent of three-fifths of the voters thereof, voting at an election, to be held for that purpose, nor, in cases requiring such assent, shall any indebtedness be allowed to be incurred to an amount, including existing indebtedness, in the aggregate exceeding five percent (5%) of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness[.]
Okla. Const. art. X, § 26(a) (emphasis added).
¶ 13 The Oklahoma Supreme Court in News Dispatch Printing Audit Company v. Board of County Commissioners in its Syllabus held that:
 The intention and plain purpose of section 26, art. 10, of the State Constitution is to require municipalities to carry on their corporate operations upon the cash plan. The revenues of each year must take care of the expenditures of such year; and any liability sought to be incurred by contract, express or implied, executed or executory, in excess of such current revenue in hand, or legally levied, is void, unless it be authorized by a vote of the people, and within the limitations therein provided.
News Dispatch Printing, 57 P.2d 1156, 1157 (Okla. 1935) (emphasis added).
¶ 14 There are two provisions of the contract in question that could potentially be affected by the provisions of Article X, §26 of the Oklahoma Constitution. Both the term of the contract and the interest-free loan to the municipality could result in an indebtedness that exceeds the revenues of the fiscal year in which they were executed. Each of these provisions will be considered separately.
A. Term of Contract
¶ 15 The initial term of the contract appears to be for ten years. However, the contract will be automatically extended each year so that the remaining term will always be ten years. Nonetheless, the mere fact that the duration of the contract will extend beyond the current fiscal year does not necessarily mean that the municipality will be incurring a debt beyond the current fiscal year. See, e.g., City of Tulsa v. Langley, 168 P.2d 116
(Okla. 1946) (upholding long term agreement for provision of legal services); City of Wewoka v. Billingsley, 331 P.2d 949
(Okla. 1958) (upholding 10-year lease agreement where city agreed to pay private company one-half of all revenue collected from usage of water lines).
¶ 16 For example, if the terms of the contract do not obligate the municipality to expend any of its funds or revenue derived from ad valorem taxation or otherwise, and instead only provides that the municipality will turn over some portion of the funds collected from residents who receive the service, the agreement would not likely be classified as a debt under Article X, § 26.See City of Wewoka v. Billingsley, 331 P.2d 949, 953 (Okla. 1958). In such a case, the contract would not create a debt because the municipality would not be obligated if it was unable to collect fees from residents who had received the service.See, e.g., Willow Wind v. Midwest City, 790 P.2d 1067, 1073
(Okla. 1989).
¶ 17 Whether the particular contract referenced in your question will result in the creation of municipal debt that must be authorized by an electoral vote will depend on the precise terms of the contract. Therefore, resolution of this question involves a question of fact that cannot by answered in an Attorney General Opinion. 74 O.S. Supp. 1996, § 18b[74-18b](A)(5).
B. Interest-Free
¶ 18 Based on the facts presented, it appears that the terms of the $150,000 interest-free loan to the municipality were structured so that the municipality would not actually have to repay any of the balance as long as the contract was extended for the ten-year period. Although the municipality would not have to expend any funds if the contract is carried out for ten years, the loan still creates a debt because there is a potential that the contract would be breached in the future and the municipality would then become obligated for the balance of the loan. Unless authorized by a vote of the people, "contracts, executed or executory, entered into in one fiscal year which in any way seek to bind the revenues of a succeeding fiscal year are void."Independent School District No. 1, McIntosh County v. Howard,336 P.2d 1097, 1098 (Okla. 1959) (citation omitted). On day one of the contract term, the municipality is obligated to repay the private company $150,000 and the fact that it may never actually have to repay the debt is irrelevant in determining whether this arrangement is prohibited by Article X, § 26. Assuming that the contract requires payment in full if the municipality ceases to use the services of the private company, this loan to the municipality creates an indebtedness that extends beyond the current fiscal year and thus, is void unless it has been authorized by popular vote as required by Article X, § 26 of the Oklahoma Constitution.
 III. REQUIREMENTS FOR COMPETITIVE BIDDING OF SOLID WASTE CONTRACTS
¶ 19 The only State statutory competitive bidding law that applies to municipalities is the Public Competitive Bidding Act of 1974 ("the Act"), as amended, which is found at 61 O.S. 1991and Supp. 1996, §§ 101-137. A.G. Opin. 86-26. The Act provides that "[a]ll public construction contracts shall be let and awarded to the lowest responsible bidder, by free and open competitive bidding after solicitation for sealed bids, in accordance with the provisions of this act." 61 O.S. 1991, §103[61-103]. By its terms, the act applies only to public construction contracts executed by public agencies. Id. The term public agency is defined by the Act to include "any county, city, town, school district, or other political subdivision of the state."61 O.S. Supp. 1996, § 102[61-102](3). A public construction contract is defined by the Act as:
 [A]ny contract, exceeding Seven Thousand Five Hundred Dollars ($7,500.00) in amount, awarded by any public agency for the purpose of making any public improvements or constructing any public building or making repairs to the same except where the improvements, construction of any building or repairs to the same are improvements or buildings leased to a person or other legal entity exclusively for private and not for public use. . . .
61 O.S. Supp. 1996, § 102[61-102](4).
¶ 20 The term "public improvements" is further defined by the Act as follows:
 "Public improvement" means any beneficial or valuable change or addition, betterment, enhancement or amelioration of or upon any real property, or interest therein, belonging to a public agency, intended to enhance its value, beauty or utility or to adapt it to new or further purposes. The term does not include the direct purchase of materials, equipment or supplies by a public agency[.]
61 O.S. Supp. 1996, § 102[61-102](5).
¶ 21 Therefore, the Act requires that municipalities competitively bid all construction contracts, including those for public improvements, and that contracts for direct purchases of materials, equipment or supplies executed by municipalities are exempt. The issue of whether a contract for solid waste collection and disposal services falls within the definition of a construction contract has previously been decided in Attorney General Opinion 87-79 which stated that "[a] contract for the provision of solid waste collection and disposal obviously does not involve `construction.'" This type of contract was found instead to be more like a contract for the rendition of services which involves the provision of work, labor, equipment and materials. Id. Neither can this type of contract logically be classified as a contract for a public improvement as that term is defined by the act since it does not impact real property or any interest therein. Thus, contracts for the collection and disposal of solid waste do not fall within the Public Competitive Bidding Act of 1974, and municipalities are not required to follow the requirements of the Act when contracting with private companies for these services.
¶ 22 It should be noted, however, that the Municipal Code authorizes municipalities to develop procedures for competitive bidding. See 11 O.S. 1991, § 1-101[11-1-101] et seq. Many municipalities have enacted competitive bidding procedures, by charter provision or ordinance, for use in advertising, receiving bids and awarding service contracts. Whether such municipal competitive bidding procedures exist in a particular municipality and whether the specific provisions apply to solid waste collection and disposal contracts are questions of fact that cannot be answered by this Opinion. 74 O.S. Supp. 1996, §18b[74-18b](A)(5).
¶ 23 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. The franchise provisions of Article XVIII, §§ 5(a) and 7 ofthe Oklahoma Constitution, which require the grant of a franchiseto be approved by a majority of qualified electors and prohibitthe granting of an exclusive franchise, do not place anylimitations on the ability of a municipality to contract with aprivate company for solid waste collection and disposal servicesunder the Solid Waste Management Act, 27A O.S. Supp. 1996, §§2-10-101[27A-2-10-101] -2-10-1111.
2. a.Whether the debt limitations of Article X, § 26 of theOklahoma Constitution prevent a municipality from entering into aten-year contract for the provision of solid waste collection anddisposal services which is automatically extended for anadditional year on the first day following the end of the firstcontract year is a question of fact that cannot be answered in anOpinion of the Attorney General under 74 O.S. Supp. 1996, §18b(A)(5).
b. A $150,000 interest-free loan to a municipality on which$15,000 is forgiven each year until completion of a ten-yearcontract period is a debt that is prohibited by Article X, § 26of the Oklahoma Constitution despite the fact that themunicipality may never have to repay the balance, because at thetime of the agreement it creates an indebtedness to be repaidbeyond the current fiscal year.
3. A municipal corporation is not required to comply with thePublic Competitive Bidding Act of 1974 when it enters into acontract with a private company for solid waste collection anddisposal services, but whether there are municipal charterprovisions or ordinances that would require these types ofcontracts be competitively bid is a question of fact that cannotbe answered in an Opinion of the Attorney General under 74 O.S.Supp. 1996, § 18b(A)(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
KELLY S. HUNTER ASSISTANT ATTORNEY GENERAL
[1] For the purposes of this Opinion, the term municipality will be used to describe non-charter cities and towns which are governed by the Municipal Code found in Title 11 of the Oklahoma Statutes. This Opinion does not address issues particular to charter municipalities. The outcome of this Opinion might be altered if the municipality involved is governed by a charter. "[A] city charter which is adopted and approved in accordance with the Constitution and which is not inconsistent therewith becomes the organic law of the city and supercedes all laws of the state in conflict therewith insofar as such laws relate to merely municipal matters." Oliver v. City of Tulsa,654 P.2d 607, 609 (Okla. 1982).
[2] The term "solid waste" is statutorily defined as "all putrescible and nonputrescible refuse in solid or semisolid form including, but not limited to, garbage, rubbish, ashes or incinerator residue, street refuse, dead animals, demolition waste, construction wastes, solid or semisolid commercial and industrial wastes including explosives, biomedical wastes, chemical wastes, herbicide and pesticide wastes." 27A O.S. Supp.1996, § 2-10-103[27A-2-10-103](16).
[3] See Ponti v. Burastero, 247 P.2d 597 (Cal.App. 3d 1952);Browning-Ferris v. City of Leon Valley, 590 S.W.2d 729
(Tex.Civ.App. 1979); State v. Lovelace, 203 P. 28 (Wash. 1921);Savage v. Waste Management, 623 F. Supp. 1505 (D.C.S.C. 1985);Finney v. Estes, 273 P.2d 638 (Colo. 1954).