**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 2 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

SOUTHERN DISPOSAL, INC., an Oklahoma
corporation,

    Plaintiff-Appellant,

v.

TEXAS WASTE MANAGEMENT, a division
of Waste Management of Texas, Inc., a Texas
corporation; CITY OF HUGO, a Municipal
corporation,

    Defendants-Appellees.

No. 97-7098

---

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. CV-97-115-S)**

---

Eric S. Gray (Thomas P. Goresen with him on the briefs) of Gray & Goresen,
P.C., Oklahoma City, Oklahoma, for Plaintiff-Appellant.

Rodney C. Ramsey of Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.,
Oklahoma City, Oklahoma, for Defendant-Appellee City of Hugo.

Stratton Taylor of Taylor, Burrage, Foster, Singhal & Mallett, Claremore,
Oklahoma, for Defendant-Appellee Texas Waste Management.

---

Before **BRORBY** and **MURPHY**, Circuit Judges, and **MARTEN**,[*] District Judge.

_____

**BRORBY**, Circuit Judge.

_____

Southern Disposal sued the City of Hugo, Oklahoma ("Hugo" or "the City") and Texas Waste Management (collectively "Defendants") alleging violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 and 2, the Commerce Clause, Due Process and Equal Protection violations under 42 U.S.C. § 1983, and various state law provisions. The district court granted the Defendants' motion to dismiss for failure to state a claim with regard to the federal questions, and refused to exercise jurisdiction over the remaining state law claims. Southern Disposal appeals, claiming the district court erred in dismissing the suit. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**BACKGROUND**

In late 1995, the City of Hugo decided to change the way it handled trash collection. Instead of providing the service as a government function, the City sought competitive bids from private companies for an exclusive contract to provide waste disposal services for the City. Southern Disposal, a company

_____

[*] The Honorable J. Thomas Marten, United States District Judge for the District of Kansas, sitting by designation.

previously under contract with the City to provide commercial waste disposal, and Texas Waste Management, both submitted bids to the City Council. On December 19, 1995, at a City Council meeting, a selection committee recommended Texas Waste Management receive the contract. Southern Disposal objected, and the City Council tabled the recommendation. The City then issued another written request for bids for the exclusive waste disposal contract. Both Southern Disposal and Texas Waste Management again submitted sealed bids and made oral presentations of their bid proposals to the selection committee. On January 16, 1996, the Hugo City Council awarded the contract to Texas Waste Management and later signed an exclusive contract with Texas Waste Management for a period of ten years, effective April 1, 1996. The contract provided for the hauling, collection, and disposal of solid waste of any residential, commercial, or industrial customer located within the city limits of Hugo. It also provided for an extension of the contract for an additional year at the end of each year. After signing the new contract, the City notified Southern Disposal it was no longer authorized to collect trash within the city limits after March 31, 1996. Following these events, Southern Disposal filed suit.

The district court first addressed the federal questions involved to determine if federal jurisdiction was appropriate. It dismissed the federal

antitrust claims, relying on both the immunity protections of the state action doctrine and Southern Disposal's failure to articulate a relevant geographic market for an antitrust claim under the Sherman Act. [2] It also ruled Southern Disposal failed to state a Commerce Clause claim because the burden on interstate commerce, if any, did not outweigh the local benefit. [3] Finally, the district court decided Southern Disposal made no valid claim of Due Process or Equal Protection violations by either Defendant, because no property right was implicated and both parties were granted fair and equal opportunity to participate in the competitive bidding process.

Appellant argues on appeal: (1) the district court erroneously ruled that Southern Disposal's complaint fails to state any antitrust violation pertaining to the solid waste disposal market for Choctaw County, Oklahoma; (2) the actions of the Defendants are not exempt from antitrust scrutiny because the Oklahoma legislature is constitutionally prohibited from articulating a state policy to permit displacement of all competition in the solid waste management business, and (3)

---

[2] Southern Disposal alleges Defendants monopolized waste disposal in Choctaw County, but the contract at issue applied only to the City. The City of Hugo is the county seat of Choctaw County, Oklahoma.

[3] Southern Disposal does not pursue any Commerce Clause claims on appeal.

the City's arbitrary and irrational actions denied Southern Disposal due process and equal protection.

**DISCUSSION**

Southern Disposal appeals the district court's grant of the Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss. The standard of review is *de novo*. *See Chemical Weapons Working Group, Inc. v. United States Dep't of the Army*, 111 F.3d 1485, 1490 (10th Cir. 1997). We will uphold a dismissal on this basis "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir.) (internal citations omitted), *cert. denied*, 118 S. Ct. 55 (1997). However, we need not accept Appellant's conclusory allegations as true. *Swanson v Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

**A.  Applicability of State Action Immunity**

We first address whether Southern Disposal alleges a federal antitrust violation sufficient to survive a motion to dismiss. Section 1 of the Sherman Act states "[e]very contract ... in restraint of trade or commerce among the several

States ... is hereby declared to be illegal." Similarly, 15 U.S.C. § 2 makes unlawful any act to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." This general rule against monopolies and restraints of trade is inapplicable to certain state action. Consequently, before deciding if Appellant sufficiently alleges the waste disposal contract invalidly restrains trade and monopolizes the City's waste disposal service, we must determine whether the state action immunity doctrine applies and shields Defendants from the application of federal antitrust laws altogether.

1. State Action Immunity Overview

The concept of state action immunity was first articulated in *Parker v. Brown*, 317 U.S. 341 (1943). *Parker* established a rule of immunity for acts of the state legislature in its sovereign capacity which ostensibly violate provisions of federal antitrust law. In *Parker*, a California statute authorized state officials to establish a marketing program for the state's raisin crop. This program effectively restricted competition and maintained higher prices. *Id.* at 346. The state law was subsequently challenged as a violation of the Sherman Act. Relying on fundamental principles of federalism, the Supreme Court held federal antitrust law did not apply because the state "as sovereign, imposed the restraint

-6-

as an act of government which the Sherman Act did not undertake to prohibit." *Id*. at 352. The Court recognized "nothing in the language of the Sherman Act or in its history ... suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Id*. at 350-51.

*Parker* clearly sets out the rule of state action immunity for the state as sovereign. However, in the present case, the challenged conduct is not directly attributable to the state legislature. Consequently, we must determine whether this state action antitrust immunity is available for parties to municipal contracts entered pursuant to state legislative authorization. In *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc*., 445 U.S. 97 (1980), the Court reaffirmed a two-part test for determining whether state action immunity is available to municipalities or entities other than state legislatures. "First, the challenged restraint must be 'one clearly articulated and affirmatively expressed as state policy'" to displace competition with regulation; "second, the policy must be 'actively supervised' by the State itself." *Id.* at 105 (quoting *Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 410 (1978)). In cases of municipal action, the second prong of active supervision is satisfied if the municipality itself supervises the conduct. *See Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 46 (1985); *Porter Testing Lab. v. Board of Regents*, 993 F.2d 768, 772 (10th

Cir.), *cert. denied* , 510 U.S. 532 (1993); *Gold Cross Ambulance & Transfer v. City of Kansas City* , 705 F.2d 1005, 1014-15 (8th Cir. 1983), *cert. denied* , 471 U.S. 1003 (1985).

### 2. The Present Case

The district court concluded the Oklahoma legislature authorized the contract entered between the City and Texas Waste Management under a "clearly articulated and affirmatively expressed" state policy. Oklahoma's policy is embodied in the Solid Waste Management Act, an enabling statute that provides:

> All incorporated cities and towns may directly or through a public trust of which it is a beneficiary develop a plan, subject to the approval of the Department, to provide a solid waste management system and shall adequately provide for the collection and disposal of solid waste generated or existing within the incorporated limits of such city or town or in the area to be served thereby at one or more disposal sites. The governing body of the city or town may enter into agreements with a county or counties, with one or more other incorporated towns or cities, with persons or trusts, or with any combination thereof, to provide a disposal site or implement a solid waste management system for the incorporated city or town.

Okla. Stat. 27A § 2-10-901(A).

We agree with the district court's construction of this statute. The Oklahoma State legislature established a clear state policy to allow regulation instead of competition in the area of waste disposal services.

The Eighth Circuit in *L & H Sanitation, Inc. v. Lake City Sanitation, Inc.*, 769 F.2d 517 (8th Cir. 1985), decided a case strikingly similar to the one presently before us. The court specifically examined an Arkansas statute which, like Oklahoma's Solid Waste Management Act, granted municipalities authority to enter into contracts for solid waste disposal. In *L & H Sanitation*, an unsuccessful bidder for a municipal solid waste disposal contract brought an action alleging federal antitrust and civil rights violations against both the successful bidder and various municipal officials. *Id.* at 519. Relying on *Hallie*, the court affirmed the district court's dismissal of the antitrust claims, citing the applicability of the state action immunity doctrine. *Id.* at 520. The Eighth Circuit found Arkansas' law specifically recognized the validity of private monopolies for solid waste disposal as part of the public health function of local government, and decided the statute authorizing the waste disposal contract evidenced a state policy to displace competition with regulation. *Id*. at 522. Thus, the exclusive solid waste disposal contract qualified for state action immunity from federal antitrust laws.

Appellant attempts to distinguish *L & H Sanitation*, *Hallie*, and other state action immunity cases, arguing state action immunity should not apply because those cases, although factually similar, do not consider any state laws analogous

to Oklahoma's unique anti-monopoly constitutional provisions. *See* Oklahoma Constitution Art. 2, § 32; Art. 5, §§ 44 and 51; Art. 9, § 45; Art. 18, §§ 5(a) and 7. Southern Disposal admits the Solid Waste Management Act permits municipalities to contract with private companies for waste removal services, but argues state action immunity does not apply to remove the waste disposal contract from the scope of the Sherman Act, because under Oklahoma's constitutional anti-monopoly provisions, the legislature did not and cannot express a state policy to replace competition with regulation in the area of solid waste disposal.

We are unpersuaded by Appellant's arguments. The Oklahoma legislature clearly articulated and affirmatively expressed a state policy to replace competition with regulation through the Solid Waste Management Act. This policy allows exclusive contracts like the one between the City and Texas Waste Management and does not violate Oklahoma's constitutional anti-monopoly provisions.

As a threshold matter, we follow *Hallie* and *L&H Sanitation*, finding that although the enabling statute does not explicitly authorize exclusive contracts, such agreements are "a foreseeable result" of the general statutory authorization

-10-

to contract. *Hallie* , 471 U.S. at 42 (finding anti-competitive effects logically result from broad authority to regulate). Even though the Solid Waste Management Act does not expressly authorize anti-competitive conduct or exclusive contracts, such arrangements are the foreseeable result of allowing municipalities to contract with "one or more other ... persons" for waste disposal services. *See* Okla. Stat. 27A § 2-10-901(A). We find the statute permits exactly the type of contract the City entered into with Texas Waste Management, and it clearly articulates and affirmatively expresses a state policy to displace competition with regulation.

However, in response to Appellant's arguments, we must still reconcile the alleged conflict between this express statutory authorization and Oklahoma's constitutional prohibitions against exclusive franchises, anti-competitive perpetuities, and monopolies. *See* Okla. Const. Art. 2, § 32; Art. 5, § 44; Art. 18, §§ 5(a) and 7.

Oklahoma cases reveal, in the area of solid waste disposal service contracts, the state legislature can express a policy to displace competition with regulation without transgressing the state's constitution. *See Burns v. City of Enid*, 217 P. 1038, 1040 (Okla. 1923) (holding "[i]t does not create an unlawful

monopoly, or unlawfully restrain trade to commit the business of collecting and disposing of [solid waste] to one person, and to exclude all others from such business." (Internal citation omitted.)); *Bishop v. City of Tulsa*, 209 P. 228, 230 (Okla. Crim. App. 1922) (holding it is within the police power of cities to regulate garbage disposal, and cities may create a monopoly for that purpose). The rationale behind the courts' decisions is simple. Even in cases where an exclusive right to collect and dispose of solid waste is granted, the anti-competitive arrangement is justified under the municipality's police power to protect the health and welfare of its residents. Courts from Oklahoma and other jurisdictions have held, almost without exception, the exercise of police power in the public interest is sufficient to overcome anti-monopoly laws and policies. *See, e.g., Public Serv. Co. v. Caddo Elec. Coop.*, 479 P.2d 572, 577, 581 (Okla. 1971) (an exclusive franchise granted to a public service electric power company does not impair the constitutional provision against exclusive franchises. "[P]olice power is an inherent attribute of sovereignty," and if legislation based on police power is necessary to the general welfare of the public, such legislation will not be stricken in violation of the provisions of the Okla. Const., Art. 2, § 32, and Art. 5, § 51).

Appellant argues the Oklahoma Supreme Court did not follow the rule from

*Burns* and *Bishop* when deciding a more recent case, *Meder v. Oklahoma City*, 350 P.2d 916 (Okla. 1960). Southern Disposal claims *Meder* contradicts these prior cases and reinforces the state constitutional provision requiring a vote of the people before allowing an entity to acquire a franchise. In *Meder*, the court held leasing of city sewage and waste disposal facilities to a public trust did not require the approval of the qualified electorate because the city was granting no franchise. *Id.* at 923. Appellant clings to language in the opinion indicating that if the public facilities had been sold, this would create a franchise and require voter approval under the state constitution. *Id*. We distinguish *Meder* because it does not deal with the same type of situation we have before us. *Meder* primarily involves a challenge to the transfer of municipal property to another entity for the purpose of operating sewage and waste disposal facilities, not a waste disposal service contract like the one between the City and Texas Waste Management. *Id.* at 919-20. *Meder* is less about exercising police power in the area of solid waste disposal, and more about the requirements for disposing of municipal property. [4] Accordingly, we find the *Burns* and *Bishop* line of cases reflect the true nature of Oklahoma's law and policy with regard to anti-competitive practices in the area of

---

[4] Interestingly, the *Meder* opinion also never specifically addresses or overrules *Burns* and *Bishop*. We do not believe the Oklahoma Supreme Court would overrule these prior decisions *sub silentio*.

municipal waste disposal service.

A recent Oklahoma Attorney General Opinion also reinforces our conclusion. The opinion addressed the precise issue before us, concluding Okla. Const. Art. 18, §§ 5(a) and 7, which prohibit the grant of an exclusive franchise unless approved by a majority of qualified electors, does not place any limits on the ability of a municipality to contract with a private company for solid waste disposal. Okla. Att'y Gen. Op., No. 97-47 (1997). Although not dispositive, the Attorney General Opinion is the most recent non-statutory indication of Oklahoma's policy with regard to solid waste disposal contracts in more than thirty years. It reiterates and justifies Oklahoma's state policy displacing competition with regulation in the area of solid waste disposal, and suggests the state's policy does not conflict with Oklahoma's anti-monopoly constitutional provisions. We accord it some deference to the extent it reinforces our conclusion in this matter.

We find the Solid Waste Management Act is a valid expression of municipal authority to enter exclusive contracts for waste disposal, and a sufficient statement of state policy displacing competition with regulation. The contract between the City and Texas Waste Management meets the requirements

-14-

for state action immunity without transgressing the Oklahoma constitution, and therefore presents no federal question under the Sherman Act.

**B. Failure to Properly Allege Sherman Act Violation**

Since we have decided the state action immunity doctrine removes this case from the scope of the Sherman Act, we need not determine whether Southern Disposal properly alleged antitrust claims for the relevant geographic market outside the City of Hugo. Accordingly, we now consider Southern Disposal's civil rights claims against the Defendants.

**C. Civil Rights Claims**

We examine Southern Disposal's civil rights claims to determine whether Defendants' conduct violated Appellant's due process and equal protection rights under the Fourteenth Amendment. In order to successfully "state a cause of action under section 1983, [Southern Disposal] must allege both the deprivation of a federal right and that the alleged action was taken under color of state law." *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 857 (10th Cir. 1991) (citing *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence*, 927 F.2d 1111, 1115 (10th Cir. 1991)). Southern Disposal rests its civil rights claims on two separate grounds. First, Appellant claims unfair and unequal treatment in

the bidding process because it allegedly was never notified to include financial assistance to the City as part of its bid proposal. Second, Southern Disposal alleges the City unlawfully terminated existing contracts after signing the new contract with Texas Waste Management.

1. Due Process

In order to state a claim for a due process violation, Defendants, acting under color of state law, must have deprived Southern Disposal of some "definite liberty or property interest ... without appropriate process." *See Curtis Ambulance v. Shawnee Bd. of County Comm'rs*, 811 F.2d 1371, 1375 (10th Cir. 1987) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 569-70 (1972)). [5] Appellant argues it holds a protected property interest in its contracts existing at the time of the bidding for the new exclusive contract. Valid contracts may constitute a property interest for purposes of due process. *Id.* at 1375. However, because its contract with the City was a month-to-month contract terminable at will, Southern Disposal's due process rights were not violated when the contract was terminated. The City validly exercised its right to terminate its contract with

---

[5] For purposes of our Fourteenth Amendment analysis, we assume Southern Disposal's claims are made only against the City as a "state actor." Appellant makes no attempt to show Texas Waste Management qualifies as a state actor and/or acted under color of state law.

Southern Disposal in favor of the newly negotiated agreement with Texas Waste Management.  The fact Southern Disposal was allowed to bid for the new contract is further indication that, although later deprived of contract rights, Southern Disposal received notice and an opportunity to respond.  We find no indication that Southern Disposal was deprived of due process with regard to its terminated contract with the City.

We also note that when the City sought competitive bids for the waste disposal contract, it did not thereby create a protected property interest or a "legitimate claim of entitlement" in the bidders.  *Roth*, 408 U.S. at 577 ("an abstract need or desire" or a "unilateral expectation" is insufficient to establish a property interest).  Many courts have held that "a disappointed bidder has no constitutionally protected property interest" until it is actually awarded the contract.  *Curtis*, 811 F.2d at 1376-77 (internal citation omitted).  Even if this court recognized a property interest in an unsuccessful bid, Southern Disposal fails to demonstrate any "mutual explicit understanding" giving rise to such an interest.  *Id.* at 1377.  Southern Disposal was never awarded the contract, and cannot claim denial of due process on that basis.  Accordingly, we agree with the district court's conclusion on these issues, and find Appellant fails to state a viable due process claim.

2. Equal Protection

Southern Disposal's Equal Protection claim is equally unavailing. The Equal Protection clause is triggered only when the government treats someone differently than another who is similarly situated. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Buckley*, 933 F.2d at 859. Appellant's complaint alleges no conduct by the City or Texas Waste Management that, if proven, would amount to unfair or unequal treatment sufficient to violate equal protection. Southern Disposal claims only that it was subject to "intentional or purposeful discrimination" during the bidding process because it did not receive notice of the City's desire to have financial assistance included as part of the bid proposal. *Buckley*, 933 F.2d at 859. This argument sounds compelling, but if we held on this basis the City's conduct violated equal protection, our decision would undermine the whole idea behind competitive bidding and lead to potentially absurd results.

Normally, the goal in making a competitive bid is to present a more appealing proposal than the competition – through lower cost or other incentives – while still trying to profit from the bargain. Southern Disposal lost the waste disposal contract because it did not present a bid to the City as appealing as its competitor's proposal. Both Texas Waste Management and Southern Disposal

received equal opportunity to present sealed bids, not once, but twice. Southern Disposal cannot successfully claim, after the fact, that the City should have given it notice regarding every possible incentive to include in the bid that would make a difference in the selection process or cause the City to choose a particular bid. Forcing municipalities and other governmental entities seeking competitive bids to notify all bidders about every factor they will consider when making decisions on competitive bids is an absurd, impossible, and unnecessary rule. If behind-the-scenes collusion occurred between the City and Texas Waste Management that gave Texas Waste Management a superior bargaining position or made it privy to inside information, a valid claim might arise. However, Appellant alleges no facts establishing any collusion or favoritism. Accordingly, we find Southern Disposal makes no tenable equal protection claim. [6]

## CONCLUSION

Southern Disposal fails to state a claim for violation of federal antitrust

---

[6] Even if we assume *arguendo* that Southern Disposal's pleadings did adequately state both Due Process and Equal Protection violations, we believe its claim would still fail constitutional scrutiny. Since no suspect class or fundamental right is involved in this instance, the City need only have a rational basis for its actions. *See Jacobs, Visconsi & Jacobs*, 927 F.2d at 1119. We find the exclusive contract with Texas Waste Management is reasonably related to the City's goal of providing waste disposal services to its residents, and therefore survives rational basis scrutiny.

laws or Fourteenth Amendment Due Process and Equal Protection.  Accordingly,

we **AFFIRM**  the decision of the district court.