**GRAND DESIGN GOLF, LTD., and Kris Arnold, Plaintiffs,**

v.

**Thomas A. GLINSTRA; Larry L. Campbell Alan Shorthouse; J. Michael Wilkes; Kevin Corbett; Larry W. Flatt; Flatt Golf Services, Inc.; Anthony F. Rupp; and Shughart Thomson & Kilroy, Defendants.**

No. 00–2057–JWL.

United States District Court, D. Kansas.

June 15, 2000.

Kris Arnold, Prairie Village, KS, pro se.

Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Thomas A Glinstra, Thomas A. Glinstra, Alan Shorthouse, Michael Wilkes, Kevin Corbett.

Michael A. Childs, Michelle M. Clark, Brown & James, P.C., Kansas City, MO, Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Larry W. Flatt, Flatt Golf Services, Inc.

Curtis L. Tideman, Lathrop & Gage L.C., Overland Park, KS, Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for R. Scott Beeler, Lathrop & Gage L.C.

Brett C. Coonrod Spencer J. Brown Deacy & Deacy Kansas City, MO, Michael K. Seck, Michael K. Seck, Fisher, Patterson, Sayler & Smith, Overland Park, KS, for Anthony F. Rupp Shughart, Thomson & Kilroy, P.C.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This suit arises out of plaintiffs' efforts to contract with the City of Olathe, Kansas for the renovation of the city's municipal golf course. Plaintiffs, a corporation and its owner, allege that various defendants interfered with plaintiffs' First Amendment rights to petition the government for a redress of grievances by refusing to permit plaintiffs to meet with two city council members about plaintiffs' renovation proposal; that various defendants violated plaintiffs' rights to substantive and procedural due process as guaranteed by the Fourteenth Amendment in connection with the city's request for proposals; and that various defendants deprived plaintiffs of the equal protection of the laws.[1] Plaintiffs also assert a variety of state law claims.

All of the defendants move to dismiss plaintiffs' complaint for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6). As set forth in more detail below, plaintiffs' federal claims are dismissed with prejudice for failure to state a claim upon which relief may be granted; the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims and those claims are therefore dismissed without prejudice.

## I. Background[2]

The City of Olathe, Kansas was a signatory to an agreement with Lakeside Hills,

---

1. In their complaint, plaintiffs also assert section 1985 conspiracy claims. They have expressly abandoned these claims in their papers. Thus, defendants' motions to dismiss are granted with respect to plaintiffs' section 1985 claims.

2. The facts presented here are taken from plaintiffs' complaint and, for purposes of de-

Inc. ("Lakeside") regarding the management of the Olathe Municipal Golf Course. At some point during the relationship between these parties, a dispute arose over the renewal of the agreement and, in 1996, Lakeside filed suit against the city in state court. According to plaintiffs' complaint, the Lakeside litigation was scheduled for trial beginning January 29, 1998. On that day, plaintiffs discovered that the case had been removed from the trial calendar in light of representations made by counsel[3] to the trial judge that the case had been settled.

Believing that the Lakeside litigation was settled, and desiring to take over the management and redevelopment of the golf course, plaintiffs scheduled a February 4, 1998 meeting with two city council members. According to plaintiffs, the purpose of this meeting was to discuss the future of the golf course (or, more specifically, plaintiffs' plans for the management and redevelopment of the course) and the impact of the Lakeside litigation on plaintiffs' proposal concerning the renovation.[4] At some point prior to the meeting, plaintiffs learned from other sources that the Lakeside litigation, in fact, had not been resolved. During this same time frame, defendant Thomas Glinstra, the City Attorney, instructed the city council members that they could not meet with plaintiffs to discuss "golf course issues." Despite plaintiffs' protests, the meeting was canceled and, despite plaintiffs' efforts to reschedule, the meeting was never rescheduled.

On February 11, 1998, defendant Larry Campbell, the Mayor of Olathe, sent a letter to plaintiffs in which he suggested that plaintiffs' attempts to communicate with selected members of the city council regarding the municipal golf course were "tantamount to circumventing normal government processes" and that such communication was "not in the best interest of the city." Mr. Campbell also referenced certain legal obligations of the city under its existing lease agreement with Lakeside. According to plaintiffs, Mr. Campbell wrote the letter at the direction of Mr. Glinstra. The letter was mailed to all members of the city council, the Acting City Manager, the Shughart defendants and plaintiffs' "coventurers" in the renovation proposal.

Ultimately, the Lakeside litigation was settled and the city began looking for an entity to take over the management and development of the golf course.[5] In that regard, defendant Michael Wilkes, the City Manager, advised plaintiffs in September 1999 that the city was in the process of developing a request for proposals (RFP) to solicit proposals for improvements to the municipal golf course. Mr. Wilkes further advised plaintiffs that plaintiff Grand Design Golf, Ltd. was qualified to receive and respond to the RFP and that the city looked forward to receiving plaintiffs' response.

fendant's motion to dismiss, the court accepts these facts as true. *See Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir. 1998).

3. In the Lakeside litigation, the city was represented by defendants Anthony Rupp and Shughart Thomson & Kilroy (hereinafter the "Shughart defendants"). Lakeside was represented by R. Scott Beeler and the Lathrop & Gage firm. Mr. Beeler and Lathrop & Gage were initially named as defendants in this action and filed a motion to dismiss. In the meantime, plaintiffs agreed to dismiss their claims against Mr. Beeler and Lathrop & Gage. Thus, Mr. Beeler and Lathrop & Gage's motion to dismiss is now moot.

4. Although it is not entirely clear from plaintiffs' complaint, plaintiffs apparently developed their proposal for the renovation in 1996 and had attempted to meet with city council members since June 1996 to discuss their proposal.

5. During this time frame, the city contracted with defendants Larry Flatt and Flatt Golf Services, Inc. (hereinafter the "Flatt defendants") to advise the city about the selection process, including the qualifications and characteristics that the successful bidder should hold.

On December 30, 1999, plaintiffs received a document from the city entitled "Request for Qualifications" (RFQ). According to plaintiffs, this document was not the RFP that the city had promised to send to plaintiffs. Rather, the document "required voluminous financial references, business references, business histories, personal resumes of principals, demonstration of financial resources, demonstration of history of profitability, demonstration of competent record of service as verified and supported by letters and other necessary evidence from employers and public agencies." Plaintiffs further allege that the "time given to assemble, process, edit and deliver this voluminous information to defendant Shorthouse was only fifteen days from receipt by plaintiffs, which period included just eight business days exclusive of holidays and weekends, and just seven business days for out of area recipients."[6] Plaintiffs allege that the response time allotted for the RFQ was "wholly unreasonable and was designed exclusively to eliminate as many responses as possible, and was particularly designed to eliminate plaintiffs from any ability to bring their long-standing comprehensive proposal before the Olathe City Council for consideration." According to plaintiffs, the qualifying process was "deliberately and maliciously designed ... to unlawfully favor one preselected, previously informed entity, and exclude as many other proponents as possible." Despite the short turn-around time, plaintiffs submitted a timely response to the RFQ. In February 2000, the city notified plaintiffs that they did not possess the qualifications the city desired for the project and, consequently, that they were not invited to submit a detailed proposal to the concerning the golf course renovation. This suit followed.

## II. Discussion

The defendants move to dismiss all of plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir.), *cert. denied*, 525 U.S. 881, 119 S.Ct. 188, 142 L.Ed.2d 153 (1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### A. First Amendment

In Counts One, Two and Three of their complaint, plaintiffs allege that defendants Thomas Glinstra, Larry Campbell, Alan Shorthouse, J. Michael Wilkes and Kevin Corbett (hereinafter the "Olathe defendants") and the Shughart defendants violated plaintiffs' First Amendment rights to petition the government for a redress of grievances. Specifically, plaintiffs claim that these defendants precluded plaintiffs from meeting with two members of the Olathe city council about plaintiffs' proposal for the renovation of the municipal golf course. In support of their motions to dismiss, the Olathe defendants and the Shughart defendants maintain that plaintiffs do not have a constitutional right to meet privately with selected members of the city council. As set forth in more detail below, the court agrees with defen-

---

**6.** Defendant Alan Shorthouse is the city's purchasing manager.

dants and dismisses plaintiffs' First Amendment claims.

In their papers, plaintiffs readily acknowledge that they were seeking a "private" meeting with only two members of the city council. Plaintiffs further acknowledge that this meeting was scheduled to take place in plaintiff Kris Arnold's home. In essence, then, plaintiffs contend that they have a constitutional right to plead their case (*i.e.*, their proposal to redevelop the golf course) on terms of their own choosing. As the Supreme Court has held, however, "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271, 283, 104 S.Ct. 1058, 79 L.Ed.2d 299 (1984). According to the Court:

> Policymaking organs in our system of government have never operated under a constitutional constraint requiring them to afford every interested member of the public an opportunity to present testimony before any policy is adopted. Legislatures throughout the nation, including Congress, frequently enact bills on which no hearings have been held or on which testimony has been received from only a select group. Executive agencies likewise make policy decisions of widespread application without permitting unrestricted public testimony. Public officials at all levels of government daily make policy decisions based only on the advice they decide they need and choose to hear. To recognize a constitutional right to participate directly in government policymaking would work a revolution in existing government practices.... Government makes so many policy decisions affecting so many people that it would likely grind to a halt were policymaking constrained by constitutional requirements on whose voices must be heard.

*Id.* at 284–85, 104 S.Ct. 1058. After analyzing both policy and precedent, the Su-

preme Court found that "[n]othing in the First Amendment ... suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Id.* at 285.

In short, plaintiffs have no constitutional right to a private meeting in their own living room with selected members of the city council. Plaintiffs' First Amendment claims are dismissed. *See Welch v. Paicos*, 66 F.Supp.2d 138, 161–62 (D.Mass. 1999) (dismissing plaintiff's right-to-petition claim where plaintiff, a real estate developer, alleged that defendants refused to grant him a meeting with town selectmen to discuss his proposal for housing development; court held that plaintiff had "no constitutional right to a hearing before, a meeting with, or even a response from the Board of Selectmen").

## B. Due Process

In Count Four of their complaint, plaintiffs allege that the Olathe defendants and the Flatt defendants violated plaintiffs' rights to procedural and substantive due process in connection with the city's "unreasonable" and "abnormal" RFQ process. In order to state a claim for a due process violation, defendants, acting under color of state law, must have deprived plaintiffs of some "definite liberty or property interest ... without appropriate process." *Southern Disposal, Inc. v. Texas Waste Management*, 161 F.3d 1259, 1265 (10th Cir. 1998) (quoting *Curtis Ambulance v. Board of County Commissioners of County of Shawnee, Kansas*, 811 F.2d 1371, 1375 (10th Cir.1987)). The Olathe and Flatt defendants move to dismiss plaintiffs' due process claims on the grounds that the allegations in plaintiffs' complaint, if proven, fail to establish any constitutionally protected property interest. As set forth in more detail below, the court agrees with defendants and dismisses plaintiffs' due process claims on this basis.

■ To establish a property interest in a particular benefit, one must have a "legitimate claim of entitlement" to it. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Whether such a claim of entitlement exists, and the sufficiency thereof, is determined by "reference to state law." *Curtis Ambulance*, 811 F.2d at 1375 (quoting *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)). While "the typical claim of entitlement is based upon 'specific statutory or contractual provisions,' it need not be." *Id.* (citation omitted). Rather, "a person's interest in a benefit is a 'property' interest for due process purposes if there are ... rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.* at 1375–76 (quoting *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).

■ In their complaint and papers, plaintiffs claim a property interest in the right to submit their redevelopment proposal to the city for its consideration and the right to receive a valid and reasonable RFP. In support of their claim, plaintiffs first direct the court to Olathe City Ordinance 3.50, an ordinance covering the city's procurement policies. This ordinance simply does not give rise to a property interest. As an initial matter, the ordinance on which plaintiffs rely is dated January 2000, but plaintiffs' due process claims are based on events that occurred in 1999. Thus, the ordinance before the court does not even appear to govern the events about which plaintiffs complain. Even assuming, however, that this particular ordinance is relevant to plaintiffs' claims, there is no language in the ordinance that imposes an obligation on the city to give plaintiffs (or anyone for that matter) an opportunity to submit a proposal. *See id.* at 811 (unsuccessful bidder had no property interest in bidding process where resolution simply

provided that county "may" enter into a contract by competitive bidding but imposed no requirement that the contract go the lower responsible bidder). Similarly, there is no language in the ordinance that mandates a particular RFP process. To the extent the ordinance addresses the RFP process, see section 3.50.040, the language of the ordinance does not preclude the use of an RFQ as a condition precedent to an RFP. In fact, the ordinance does not speak to the form or content of the RFP process. In sum, the court concludes that City Ordinance 3.50 does not give plaintiffs a property interest in the right to submit a proposal to the city or the right to receive a "reasonable" RFP.[7]

Plaintiffs direct the court to no other applicable ordinance, rule, statute or judicial authority which imposes an obligation on the city to utilize a particular RFP process or to give plaintiffs an opportunity to present their redevelopment proposal. Plaintiffs do, however, highlight two letters they received from city officials which, according to plaintiffs, constitute "mutually explicit understandings" between the city and plaintiffs giving rise to a such a property interest. Specifically, plaintiffs rely on a September 10, 1999 letter they received from defendant and city manager J. Michael Wilkes in which Mr. Wilkes states in relevant part as follows:

> We are currently developing a Request for Proposals for improvements and management options at Lakeside Hills. We anticipate this RFP will be sent to qualified companies in the near future. Grand Design Golf will be sent this RFP, and we look forward to your response.

Plaintiffs also point to a September 16, 1999 letter they received from assistant city manager Peter Souza in which Mr. Souza writes:

7. To the extent plaintiffs contend that they were entitled to receive an RFP rather than an RFQ based on the city's custom or practice of sending out RFPs rather than initial RFQs, the court rejects this argument. *See Curtis Ambulance*, 811 F.2d at 1384 n. 14 (a property interest cannot be inferred from a consistent practice without some basis in state law).

The City Council has directed the City Manager to develop a process to request proposals for the management and redevelopment of Lakeside Hills. At this time it is anticipated that a Request for Proposals will be issued prior to the end of the year, with proposals due back during the first quarter of 2000. Your firm is on the distribution list for the Request for Proposals.

Plaintiffs cite no authority suggesting that the kind of vague assurances contained in these letters are sufficient to create a constitutionally protected property interest. Significantly, the letters clearly demonstrate the RFP process was in the formative stages. No specific bidding process was promised to plaintiffs and no details of the anticipated bidding process were given to plaintiffs. In short, the allegations in plaintiffs' complaint, even if true, fail to demonstrate any "mutually explicit understandings" among the parties with respect to the form or content of the RFP process. Under the facts alleged, plaintiffs have failed to state a claim for relief and plaintiffs' due process claims are therefore dismissed.

## C. Equal Protection

■ Plaintiffs' equal protection claims, set forth in Count Five of plaintiffs' complaint, is equally unavailing. The Equal Protection Clause is triggered only when the government treats someone differently than another who is similarly situated. *Southern Disposal, Inc. v. Texas Waste Management,* 161 F.3d 1259, 1266 (10th Cir.1998) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); *Buckley*

*Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.,* 933 F.2d 853, 859 (10th Cir. 1991)). Thus, to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them. *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir.1998) (citing *Gehl Group v. Koby,* 63 F.3d 1528, 1538 (10th Cir.1995)). Plaintiffs' complaint contains no allegations whatsoever that the Olathe defendants or the Flatt defendants treated anyone differently than plaintiff was treated. In fact, plaintiffs' complaint and papers indicate only that all bidders received equal opportunity to present their qualifications to the city. In other words, plaintiffs do not claim that any other bidder received additional time to submit a response to the city's RFQ or that any other bidder was permitted to meet with members of the city council on the subject of the golf course during the time frame that plaintiffs sought to meet with city council members. Absent any allegations that these defendants treated other bidders differently than plaintiffs were treated, plaintiffs' equal protection claims must be dismissed. *See Southern Disposal,* 161 F.3d at 1266 (affirming district court's dismissal of equal protection claim under Rule 12(b)(6) where complaint alleged no conduct in bidding process that, if proven, would amount to unfair or unequal treatment sufficient to violate equal protection).[8]

## D. State Law Claims

■ In their complaint, plaintiffs also assert a claim against all defendants for tortious interference with prospective busi-

---

**8.** To the extent plaintiffs challenge the city's alleged "preselection" of another bidder, this, too, fails to state an equal protection claim. This court is aware of "no authority 'holding or suggesting that the exercise by a state of a consumer's choice between competing products denies the disappointed supplier equal protection of the laws.'" *See Curtis Ambulance v. Board of County Commissioners of County of Shawnee, Kansas,* 811 F.2d 1371, 1385 (10th Cir.1987) (affirming 12(b)(6) dis-

missal of disappointed bidders' equal protection claim) (quoting *Coyne–Delany Co. v. Capital Development Bd.,* 616 F.2d 341, 343 (7th Cir.1980)). Moreover, plaintiffs' complaint contains no allegation that any "behind-the-scenes collusion" occurred between the defendants and the successful bidder that gave this bidder "a superior bargaining position or made it privy to inside information." *See Southern Disposal,* 161 F.3d at 1266.

ness advantage and a claim against the Shughart defendants and the Olathe defendants under section 3 of the Bill of Rights of the Kansas Constitution.[9] It is undisputed that no separate jurisdictional basis for these claims exists in this case. Because the court finds dismissal appropriate with respect to each of plaintiffs' claims arising under federal law, the court declines to exercise its discretion to address the merits of plaintiffs' remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir.1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); *see also Pride v. Does*, 997 F.2d 712, 717 (10th Cir.1993) (in light of Tenth Circuit's affirmance of district court's dismissal of plaintiffs "jurisdictionally predicate" federal claims under § 1983, dismissal of plaintiff's pendent state law claims appropriate). Accordingly, all of plaintiffs' state law claims are hereby dismissed without prejudice.[10]

### E. Defendants' Requests for Costs and Fees

■ In their motions, defendants request the court award them their costs and fees associated with responding to plaintiffs' complaint. The Olathe defendants and the Shughart defendants base their requests on Rule 11 of the Federal Rules of Civil Procedure and 42 U.S.C. § 1988. The Flatt defendants cite no authority in support of their request. To the extent defendants' requests are made pursuant to Rule 11, those requests are denied because none of the defendants have filed separate motions seeking such relief. *See* Fed. R.Civ.P. 11(c)(1)(A) ("A motion for sanctions under this rule shall be made separately from other motions or requests . . . ."). To the extent defendants' requests are made pursuant to section 1988, those requests are similarly denied. A prevailing defendant may recover fees under section 1988 only when the plaintiff's action is found to be unreasonable, frivolous, meritless or vexatious. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The court is unwilling to conclude that plaintiffs' complaint here was meritless or otherwise frivolous simply because plaintiffs did not prevail on their federal claims. *See id.* at 421–22, 98 S.Ct. 694 (district court must resist the "understandable temptation" of concluding that the action was unreasonable or without foundation simply because the plaintiff did not ultimately prevail). The defendants have not come forward with any other reason supporting their requests. Thus, the requests for costs and fees are denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Thomas Glinstra, Larry Campbell, Alan Shorthouse, J. Michael Wilkes and Kevin Corbett's motion to dismiss (doc. # 4) is **granted;** defendants Shughart Thomson & Kilroy and Anthony Rupp's motion to dismiss (doc. # 6) is **granted;** defendants R. Scott Beeler and Lathrop & Gage's motion to dismiss (doc. # 8) is **moot;** and defendants Larry W. Flatt and Flatt Golf Services, Inc.'s motion to dismiss (doc. # 10) is

---

9. Plaintiffs' claim under the Kansas Constitution mirrors his First Amendment claim; it challenges defendants' alleged interference with plaintiffs' right to petition the government for a redress of grievances.

10. In their complaint, plaintiffs also make reference to the Kansas Tort Claims Act. It is unclear from their complaint and their papers, however, whether plaintiffs have intended to assert a claim under this Act. Similarly, plaintiffs' complaint makes a vague reference to the Flatt defendants' alleged breach of their duty to the City of Olathe to be "impartial advisors." The complaint also contains references to certain defendants' purportedly fraudulent conduct. Again, it is unclear whether plaintiffs have intended to assert any of these claims. To the extent plaintiffs have asserted such claims, the court declines to exercise jurisdiction over those claims for the reasons set forth above. Should plaintiffs decide to pursue any claims in state court, they would be well advised to attempt to draft a complaint that more clearly sets forth their claims for relief.

granted. Plaintiffs' complaint is hereby dismissed in its entirety. Plaintiffs' federal claims are dismissed with prejudice and plaintiffs' state law claims are dismissed without prejudice.

IT IS SO ORDERED.